*Model for Letters of Request recommended for use in applying the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*

**Request for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

*N.B. Under the first paragraph of Article 4, the Letter of Request shall be in the language of the authority requested to execute it or be accompanied by a translation into that language. However, the provisions of the second and third paragraphs may permit use of English, French or another language.*

*In order to avoid confusion, please spell out the name of the month in each date.*

*Please fill out an original and one copy of this form (use additional space if required).*

| | |
|---|---|
| 1. Sender | Juzgado de I³ Instancia n° 54 de Barcelona |
| | Gran Via de les Corts Catalanes 111, Edif. C, Planta 11. |
| | 08014 Barcelona |

| | |
|---|---|
| 2. Central Authority of the Requested State | U.S. Department of Justice |
| | Civil Division |
| | Office of International Judicial Assistance |
| | 1100 L Street N.W. |
| | Room 11006 Washington, D.C. 20530 |
| | United States of America. |

| | |
|---|---|
| 3. Person to whom the executed request is to be returned | Juzgado de I³ Instancia n° 54 de Barcelona |
| | Gran Via de les Corts Catalanes 111, Edif. C, Planta 11. |
| | 08014 Barcelona |

4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request

| | |
|---|---|
| Date | 20th  November  2014 |
| Reason for urgency* | Need to answer the questions that will be enclosed in the current document |

\* Omit if not applicable.

NOV - 4 2014

189 - 21 -15 - (4)

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED
APPLICANT HAS THE HONOUR TO SUBMIT THE FOLLOWING REQUEST:

| | | | |
|---|---|---|---|
| a | Requesting judicial authority (Article 3, a)) | Juzgado de Iª Instancia nº 54 de Barcelona Gran Via de les Corts Catalanes 111, Edif. C, Planta 11, 08014 Barcelona. | |
| b | To the competent authority of (Article 3, a)) | U.S DEPARTMENT OF JUSTICE CIVIL DIVISION OFFICE OF INTERNATIONAL JUDICIAL ASSITANCE BENJAMIN FRANKLIN STATION P.O BOX 14360 WASHINGTON, D.C 20004 UNITED STATES OF AMERICA | |
| C | Names of the case and any any identifying number | 1315/2012   C2 | |

6. Names and addresses of the
   parties and their representatives
   (including representatives in the
   requested State*) (Article 3, b))

| | | |
|---|---|---|
| a | Plaintiff | INCOFINSO SPA |
| | Representatives | ANA SERRAT CARMONA |
| b | Defendant | LA GINEBRA |
| | Representatives | JESUS MILLAN LLEOPART |
| c | Other parties | INVISTA |
| | Representatives | IGNACIO DE ANZIZU FUREST |

* Omit if not applicable.

7. a   Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Article3, c))

LAWSUIT          PROCEEDING

b   Summary of complaint

ITAM'S INICIAL DEBT TO DUPON, THEY AGREE TO MAKE FRACTIONATED PAYMENTS AND THEY INTRODUCE THE GINEBRA S.L. AS PARTICIPIANT AND GUARANTOR. INCOFINSCO OBTAINED THE CREDIT, AND THE COMPANY COMUNICATED IT TO THE GINEBRA S.L. TO WHOM IT IS CLAIMED TO PAY 15.030.947,76€. INVISTA SAYS IT OWNS THE CREDIT.

c   Summary of defence and counterclaim*

AMOUNT CLAIMED OF 15.030.947,76 EUROS OF INCOFINSCO SPA AGAINST LA GINEBRA S.L. AND INVISTA.

d   Other necessary information or documents*

Find attached questions to be answered in the shortest deadline.

8. a   Evidence to be obtained or other judicial act to be performed (Article 3, d))

ANSWER THE QUESTIONS THAT GO WITH.

b   Purpose of the evidence or judicial act sought

9.   Identity and address of any person to be examined (Article 3, e))*

E.I. DU PONT DENEMOURS AND COMPANY

ADRESS IN 1007 MARKET STREET, WILGMINTON 1089, USA.

THEY WILL BE ENCLOSED IN CLOSED                ENVELOPES.

10.   Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (Article 3, f)

* Omit if not applicable.

11.  Documents or other property
     to be inspected (Article 3, g))*

12.  Any requirement that the          Statement without the need to take an oath, but with the
     evidence be given on oath or       warning that a negative answer, evasive or incomplete
     affirmation and any special        answers can mean that they recognize that what is
     form to be used (Article 3,        referred to the question it is known, provided that the
     h))*                               person interviewed had personally intervening in the
                                        commission of the acts, and the establishing of the
                                        facts,as certains, would be detrimental.

13   Special methods or procedure to    Answers in writing
     be followed (e.g. oral or in writing,
     verbatim, transcript or summary,
     cross-examination, etc.) (Articles
     3, l) and 9)*

14.  Request for notification of the    It is not necessary because the parts involved
     time and place for the             haven't indicate the will to be there during the
     execution of the Request and       statements.
     identity and address of any
     person to be notified (Article
     7)*

15.  Request for attendance or          The presence of this Court is not necessary for the
     participation of judicial          statement.
     personnel of the requesting
     authority at the execution of
     the Letter of Request (Article
     8)*

* Omit if not applicable.

16. Specification of privilege or
    duty to refuse to give
    evidence under the law of
    the State of origin (Article 11,
    b))*

We are referring to point 12.

17. The fees and costs incurred which
    are reimbursable under the
    second paragraph of Article 14 or
    Under article26 of the Convention
    Will be borne by*

It is considered not to have Costs.

DATE OF REQUEST

18/9/2014

SIGNATURE AND SEAL OF THE
REQUESTING AUTHORITY

* Omit if not applicable.

Interrogation of the witness E.I. Du Pont de Nemours and Company, questions asked by INCOFINSCO:

1. State whether it is true that the Company here answering belongs to DU PONT Group and that the brand "Du Pont de Nemours" is closely related in front of a third party with the one of DU PONT TEXTILES & INTERIORS (INTERNATIONAL) S.A.

2. Refer the companies from with the Company here answering comes from as a successor, segregate or merged and its successive changes of name and dates incurred and successive business addresses.

3. To be more concrete, referring to the question before, explain the present and historical relationship among DU PONT TEXTILES & INTERIORS (INTERNATIONAL), S.A., DU PONT FIBER TEXTILES, S.A., DU PONT de Nemours International, S.A., E.I Du Pont de Nemours and Company, ITAM, SPA INTERNATIONAL SAS DI NERINA FILIPPONE & C, KoSa, Sarl. and INVISTA (International) SARL.

4. Explain in particular if you know the connections and links between DU PONT Group and the entity generically named INVISTA.

5. State whether it is true that by certificate of August the 6th 2005, Incofinsco SpA proposed to DU PONT TEXTILES & INTERIORS (INTERNATIONAL) S.A. the acquisition pro soluto of the total credit held against Itam, expressly stating that the cashing of the check attached to the contact offer constituted acceptance of the contractual proposal and perfected the contract.

6. State whether it is true that the acknowledgement of receipt concerning the offer and the check was returned from Switzerland with Stamp reception "DU PONT de Nemours International, S.A." the 12/08/2005.

7. State whether it is true that DU PONT de Nemours International, S.A. signed the acknowledgment of receipt as a delegate and correspondence receiver from the subsidiary Company here answering, which is its subsidiary company, and that by that time already had the new corporate name DU PONT Textile Fibers sa).

8. State whether it is certain that the bank check enclosed to the proposal of Incofinsco SPA was presented to collection on the 23rd of August 2005 by DU PONT TEXTILES & INTERIORS (INTERNATIONAL) S.A. or its authorised and it was collected indeed the 25th August 2005.

9. State whether it is certain that, being DU PONT Textiles & Interiors (International) S.A. subsidiary company of DU PONT de Nemours International S.A, this one was expressly or implicitly empowered to collect debt instruments issued to its subsidiary company.

10. State whether it is true that by notarial deed following the collection of Incofinsco SPA bank check, DU PONT TEXTILES & INTERIORS (INTERNATIONAL) S.A.  yielded to INVISTA SARL INTERNATIONAL the

credit originally held against ITAM, not existing another public document stating that, and that, consequently, INVISTA (INTERNATIONAL) Sarl., by letter of 23rd September 2005 informed to ITAM to have the credit claimed to ITAM by DU PONT.

11. Refer if you know that on the 29th September 2005, ITAM answered Invista (International) Sarl, saying that, at an earlier date, ITAM received notice of credit assignment to Incofinsco SPA, having ITAM already accepted this assignment.

12. Refer if you know that in March 2008, INVIST filed lawsuit in USA against DU PONT claiming, among others, a compensation for damages caused after DUPONT yielded illegitimately to INCOFINSCO the credit against ITAM.

13. Refer if you know that INVISTA had already warned DU PONT that the check sent by Incofinsco shouldn't be charged as that perfected the cession of the credit, but despite the warning, it was charged.

14. Refer if you know the sales private document of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA, and if you know that there was and another contract between the same parties, named Purchase Agreement, being the parties subjected by its terms and provisions and to which the referred private document was integrated.

15. In case of positive answer to the previous question, refer if you know that in case of conflict between the terms and provisions of the Purchase Agreement and the agreement of 30th April 2004, prevailed the Purchase Agreement.

QUESTIONS FOR E.I. DU PONT DE NEMOURS AND COMPANY

1.  Is it true that on 16 November 2003 you signed a sale/purchase agreement called "Purchase Agreement" whereby you sold one of the branches of activity of the Du Pont group, namely the Invista fibers business?

2.  Is it true that such Purchase Agreement was entered into by: (i) on one hand, E.I. Du Pont de Nemours and Company and the other international Sellers specified in the Purchase Agreement (including Du Pont International Operations, S.à.r.l., at that time named Invista (International), S.A.); and (ii) on the other hand, KED Fiber Ltd. and KED Fiber LLC?

3.  Is it true that on 17 December 2004 E.I. Du Pont de Nemours and Company signed an agreement with Invista B.V. called the "Supplemental Agreement"?

4.  Is it true that in article 1, section 1.4 of said agreement, it was acknowledged that all rights and interests of E.I. Du Pont de Nemours and Company and of any of its subsidiaries in the debt of 15,030,947.76 € that I.T.A.M., S.p.A. Industria Tessuti a Maglia ("**ITAM**"), subsequently named I.T.A.M., S.A.S. di Nerina Filippone & C, had acknowledged in the public deed signed in Spain on 8 May 2003 with Du Pont International Operations, S.à.r.l., at that time named Du Pont Textiles and Interiors (International), S.A. (the "**ITAM Debt**"), had been transferred to KoSa, S.à.r.l. (subsequently named Invista (International), S.à.r.l.)?

5.  Is it true that in such article it was acknowledged that the ITAM Debt that had been transferred in the "Asset Assignment Deed Stock Transfer and Assumption Agreement" of 30 April 2004 was partly guaranteed by certain mortgages, guarantees and promissory notes?

6.  Is it true that in said article of the agreement it was acknowledged that such mortgages, guarantees and promissory notes were transferred together with the transfer of the ITAM Debt?

7.  Is it true that, given that the ITAM Debt had already been transferred, the additional steps referred to in the article were intended for the full transfer of the guarantees?

8.  Is it true that one of the documents signed as a result of said collaboration commitment was the public deed signed on 25 August 2005 in Lausanne, Canton of Vaud (Switzerland) by Du Pont International Operations, S.à.r.l., at that time named Du Pont Textiles Fibers, S.A. and Invista (International), S.à.r.l. (formerly named KoSa, S.à.r.l.)?

**Interrogation of the witness E.I. Du Pont de Nemours and Company, questions asked by LA GINEBRA, S.L.:**

- Refer the companies in which the Company was or is internal division, successor, merged and its successive changes of name and dates incurred, in each case, and successive business addresses.

- Refer which treatment and links historically exist among DU PONT TEXTILES & INTERIORS (INTERNATIONAL), S.A., DU PONT FIBER TEXTILES, S.A., DU PONT de Nemours International, S.A., E.I Du Pont de Nemours and Company, ITAM, SPA INTERNATIONAL SAS DI NERINA FILIPPONE & C, KoSa, Sarl. and INVISTA (International) SARL.

- State whether it is true that you belong to DU PONT GROUP.

- State whether it is true that, in front of a third party, the seal of Du Pont de Nemours is usually related to the one of DU PONT TEXTILES & INTERIORS (INTERNATIONAL) SA.

- Refer the relationship between INVISTA, in their various denominations, and DU PONT Group.

- State whether it is true that by registered letter of August the 6th 2005, Incofinsco SpA proposed to DuPont Textiles & Interiors (International), S.A. the acquisition pro soluto of the total credit corresponding to Itam, offering through bank check attached to the proposal, expressly stating that the cashing of the check constituted acceptance of the contractual proposal and that the contract would be perfected with the payment of the check.

- State whether it is true that the acknowledgement of receipt, attached to the registered letter containing the proposal and the bank check of Incofinsco, was returned from Switzerland with Stamp reception "DU PONT de Nemours International, S.A." the 12/08/2005.

- State whether it is true that DU PONT de Nemours International, S.A. signed the acknowledgment of receipt as a delegate and correspondence receiver from the subsidiary company DU PONT Textiles & Interiors (International), S.A., (by that time already with the new corporate name DU PONT Textile Fibers sa).

- State whether it is true that DU PONT de Nemours International s.a. was delegated, express or implied, to collect debt instruments issued to the subsidiary company DU PONT Textiles & Interiors (International) S.A..

- State whether it is certain that the bank check enclosed to the proposal of Incofinsco SPA was presented to collection on the 23rd of August 2005 by DU

PONT TEXTILES & INTERIORS (INTERNATIONAL) SA, or his authorized, and it was collected indeed the 25th August 2005.

- State whether it is true that by notarial deed following the collection of Incofinsco SPA bank check, DU PONT TEXTILES & INTERIORS (INTERNATIONAL) S.A. yielded to INVISTA SARL INTERNATIONAL the credit originally held against ITAM and that no other public document concerning this issue exists.

- State whether it is true that Invista (International) Sarl, by letter dated the 23rd September 2005 sent to ITAM, declared to be assignee of the credit claimed to ITAM by Du Pont.

- State whether it is true that on the 29th September 2005, ITAM answered Invista (International) Sarl, saying that, at an earlier date, ITAM received notice of credit assignment to Incofinsco SPA, having ITAM already accepted this                                                                                       assignment.

- State whether it is true that in March 2008, all the companies that made up the INVISTA group, filed lawsuit against DU PONT for various issues and also claiming for damages caused after DUPONT yielded to INCOFINSCO the credit against ITAM.

- State whether it is true that INVISTA had already warned DU PONT that the check sent by Incofinsco "does not have to be charged".

- State whether it is true that INVISTA filed lawsuit in the U.S.A against DU PONT asking to compensate INVISTA for the loss generated by the unfulfillment in relation to the fact that DU PONT collected the check of INCOFINSCO, under Article 8.4.a.i of the purchase contract, as according to INVISTA "all this supposed breach of the purchase contract, and it was causing a number of damages that should be compensated, and for which El Du Pont de Nemours and Company was being claimed".

- State whether it is true that the private document of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA, did not perfect a purchase agreement, but an agreement of promise, sale or transfer.

- State whether it is true that apart the document of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA, according to DU PONT's allusions, there was another contract, named Purchase Agreement, being the parties subjected by its terms and provisions and to which the agreement of 30th April 2004 was integrated.

- Refer the complete information regarding that Purchase Agreement referred on the document of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA.

- State whether it is true that in case of conflict between the terms and provisions of the Purchase Agreement and the agreement of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA, prevailed the Purchase Agreement

*Model for Letters of Request recommended for use in applying the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*

**Request for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

*N.B. Under the first paragraph of Article 4, the Letter of Request shall be in the language of the authority requested to execute it or be accompanied by a translation into that language. However, the provisions of the second and third paragraphs may permit use of English, French or another language.*

*In order to avoid confusion, please spell out the name of the month in each date.*

*Please fill out an original and one copy of this form (use additional space if required).*

| | |
|---|---|
| 1. Sender | Juzgado de I³ Instancia n° 54 de Barcelona Gran Via de les Corts Catalanes 111 Edificio C, Planta 11 08014 Barcelona |
| 2.  Central Authority of the Requested State | U.S. Department of Justice Civil Division Office of International Judicial Assistance 1100 L Street N.W. Room 11006 Washington, D.C. 20530 United States of America. |
| 3.  Person to whom the executed request is to be returned | Juzgado de I³ Instancia n° 54 de Barcelona Gran Via de les Corts Catalanes 111 Edificio C, Planta 11. 08014 Barcelona |

4.  Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request

| | |
|---|---|
| Date | 20th  November  2014 |
| Reason for urgency* | Need to answer the questions that will be enclosed in the current document |

* Omit if not applicable.

NOV − 4 2014
177-21-15 (5)

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOUR TO SUBMIT THE FOLLOWING REQUEST:

| | |
|---|---|
| Requesting judicial authority (Article 3,*a*)) | Juzgado de Iª Instancia n° 54 de Barcelona Gran Via de les Corts Catalanes 111, Edificio C, Planta 11, 08014 Barcelona |
| To the competent authority of (Article 3, *a*)) | U.S DEPARTMENT OF JUSTICE CIVIL DIVISION OFFICE OF INTERNATIONAL JUDICIAL ASSITANCE BENJAMIN FRANKLIN STATION P.O BOX 14360 WASHINGTON, D.C 20004 UNITED STATES OF AMERICA |
| Names of the case and any any identifying number | 1315/2012   C2 |

6.  Names and addresses of the parties and their representatives (including representatives in the requested State*) (Article 3, *b*))

| | | |
|---|---|---|
| *a* | Plaintiff | INCOFINSO SPA |
| | Representatives | ANA SERRAT CARMONA |
| *b* | Defendant | LA GINEBRA |
| | Representatives | JESUS MILLAN LLEOPART |
| *c* | Other parties | INVISTA |
| | Representatives | IGNACIO DE ANZIZU FUREST |

* Omit if not applicable.

7. a — Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Article3, c))

LAWSUIT        PROCEEDING

b — Summary of complaint

ITAM'S INICIAL DEBT TO DUPON, THEY AGREE TO MAKE FRACTIONATED PAYMENTS AND THEY INTRODUCE THE GINEBRA S.L. AS PARTICIPANT AND GUARANTOR. INCOFINSCO OBTAINED THE CREDIT, AND THE COMPANY COMUNICATED IT TO THE GINEBRA S.L. TO WHOM IT IS CLAIMED TO PAY 15.030.947,76€. INVISTA SAYS IT OWNS THE CREDIT.

c — Summary of defence and counterclaim*

AMOUNT CLAIMED OF 15.030.947,76€ OF INCOFINSCO SPA AGAINST LA GINEBRA S.L. AND INVISTA.

d — Other necessary information or documents*

Find attached questions to be answered in the shortest deadline.

8. a — Evidence to be obtained or other judicial act to be performed (Article 3, d))

ANSWER THE QUESTIONS THAT GO WITH.

b — Purpose of the evidence or judicial act sought

9. — Identity and address of any person to be examined (Article 3, e))*

DU POINT TEXTILES & INTERIORES (INTERNATIONAL)S.A, LATER NAMED DU PONT DE NEMOURS S.A SETTLED IN 1007 MARKET STREET WILMINGTON DE 1989, USA.

THEY WILL BE ENCLOSED IN CLOSED        ENVELOPES.

10. — Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (Article 3, f)

* Omit if not applicable.

11.     Documents or other property
        to be inspected (Article 3, g))*

12.     Any requirement that the          Statement without the need to take an oath, but with the
        evidence be given on oath or      warning that a negative answer, evasive or incomplete
        affirmation and any special       answers can mean that they recognize that what is
        form to be used (Article 3,       referred to the question it is known, provided that the
        h))*                              person interviewed had personally intervening in the
                                          commission of the acts, and the establishing of the
                                          facts,as certains, would be detrimental.

13      Special methods or procedure to   Answers in writing
        be followed (e.g. oral or in writing,
        verbatim, transcript or summary,
        cross-examination, etc.) (Articles
        3, l) and 9)*

14.     Request for notification of the   It is not necessary because the parts involved
        time and place for the            haven't indicate the will to be there during the
        execution of the Request and      statements.
        identity and address of any
        person to be notified (Article
        7)*

15.     Request for attendance or         The presence of this Court is not necessary for the
        participation of judicial         statement.
        personnel of the requesting
        authority at the execution of
        the Letter of Request (Article
        8)*

* Omit if not applicable.

**Interrogation of the witness DU PONT TEXTILES & INTERIORS (INTERNATIONAL) SA, questions asked by INCOFINSCO:**

1. State whether it is true that the Company here answering belongs to DU PONT Group and that the brand "Du Pont de Nemours" is closely related in front of a third party with the one of the company here answering.

2. Refer the companies from with the Company here answering comes from as a successor, segregate or merged and its successive changes of name and dates incurred and successive business addresses.

3. To be more concrete, referring to the question before, explain the present and historical relationship among DU PONT TEXTILES & INTERIORS (INTERNATIONAL), S.A., DU PONT FIBER TEXTILES, S.A., DU PONT de Nemours International, S.A., E.I Du Pont de Nemours and Company, ITAM, SPA INTERNATIONAL SAS DI NERINA FILIPPONE & C, KoSa, Sarl. and INVISTA (International) SARL.

4. Explain in particular if you know the connections and links between DU PONT Group and the entity generically named INVISTA.

5. State whether it is true that by certificate of August the 6th 2005, Incofinsco SpA offered to the company here answering the acquisition pro soluto of the total credit held against Itam, expressly stating that the cashing of the check attached to the contact offer constituted acceptance of the contractual proposal and perfected the contract.

6. State whether it is true that the acknowledgement of receipt concerning the offer and the check was returned from Switzerland with Stamp reception "DU PONT de Nemours International, S.A." the 12/08/2005.

7. State whether it is true that DU PONT de Nemours International, S.A. signed the acknowledgment of receipt as a delegate and correspondence receiver from the subsidiary Company here answering, which is its subsidiary company, and that by that time already had the new corporate name DU PONT Textile Fibers sa).

8. State whether it is certain that the bank check enclosed to the proposal of Incofinsco SPA was presented to collection on the 23rd of August 2005 and it was collected indeed the 25th August 2005.

9. State whether it is certain that, being DU PONT Textiles & Interiors (International) S.A. subsidiary company of DU PONT de Nemours International S.A, this one was expressly or implicitly empowered to collect debt instruments issued to its subsidiary company.

10. State whether it is true that by notarial deed following the collection of Incofinsco SPA bank check, the company here answering yielded to INVISTA SARL INTERNATIONAL the credit originally held against ITAM and that that cession was informed by INVISTA (INTERNATIONAL) Sarl. to ITAM by letter of 23rd September 2005.

16. Specification of privilege or
    duty to refuse to give
    evidence under the law of
    the State of origin (Article 11,
    b))*

We are referring to point 12.

17. The fees and costs incurred which
    are reimbursable under the
    second paragraph of Article 14 or
    Under article26 of the Convention
    Will be borne by*

It is considered not to have Costs.

DATE OF REQUEST

18/9/2014

SIGNATURE AND SEAL OF THE
REQUESTING AUTHORITY

* Omit if not applicable.

**Interrogation of the witness DU PONT TEXTILES & INTERIORS (INTERNATIONAL) SA, questions asked by LA GINEBRA, S.L.:**

- Refer the companies in which the Company was or is internal division, successor, merged and its successive changes of name and dates incurred, in each case, and successive business addresses.

- Refer which treatment and links historically exist among DU PONT TEXTILES & INTERIORS (INTERNATIONAL), S.A., DU PONT FIBER TEXTILES, S.A., DU PONT de Nemours International, S.A., E.I Du Pont de Nemours and Company, ITAM, SPA INTERNATIONAL SAS DI NERINA FILIPPONE & C, KoSa, Sarl. and INVISTA (International) SARL.

- State whether it is true that you belong to DU PONT GROUP.

- State whether it is true that, in front of a third party, the seal of Du Pont de Nemours is usually related to the one of DU PONT TEXTILES & INTERIORS (INTERNATIONAL) SA.

- Refer the relationship between INVISTA, in their various denominations, and DU PONT Group.

- State whether it is true that by registered letter of August the 6th 2005, Incofinsco SpA proposed to DuPont Textiles & Interiors (International), S.A. the acquisition pro soluto of the total credit corresponding to Itam, offering through bank check attached to the proposal, expressly stating that the cashing of the check constituted acceptance of the contractual proposal and that the contract would be perfected with the payment of the check.

- State whether it is true that the acknowledgement of receipt, attached to the registered letter containing the proposal and the bank check of Incofinsco, was returned from Switzerland with Stamp reception "DU PONT de Nemours International, S.A." the 12/08/2005.

- State whether it is true that DU PONT de Nemours International, S.A. signed the acknowledgment of receipt as a delegate and correspondence receiver from the subsidiary company DU PONT Textiles & Interiors (International), S.A., (by that time already with the new corporate name DU PONT Textile Fibers sa).

- State whether it is true that DU PONT de Nemours International s.a. was delegated, express or implied, to collect debt instruments issued to the subsidiary company DU PONT Textiles & Interiors (International) S.A..

- State whether it is certain that the bank check enclosed to the proposal of Incofinsco SPA was presented to collection on the 23rd of August 2005 by DU

11. Refer if you know that on the 29th September 2005, ITAM answered Invista (International) Sarl, saying that, at an earlier date, ITAM received notice of credit assignment to Incofinsco SPA, having ITAM already accepted this assignment.

12. Refer if you know that in March 2008, INVIST filed lawsuit in USA against DU PONT claiming, among others, a compensation for damages caused after DUPONT yielded illegitimately to INCOFINSCO the credit against ITAM.

13. Refer if you know that INVISTA had already warned DU PONT that the check sent by Incofinsco shouldn't be charged as that perfected the cession of the credit, but despite the warning, it was charged.

14. Refer if you know the sales private document of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA, and if you know that there was and another contract between the same parties, named Purchase Agreement, being the parties subjected by its terms and provisions and to which the agreement of 30th April 2004 was integrated.

15. In case of positive answer to the previous question, refer if you know that in case of conflict between the terms and provisions of the Purchase Agreement and the agreement of 30th April 2004, prevailed the Purchase Agreement.

PONT TEXTILES & INTERIORS (INTERNATIONAL) SA. or his authorized, and it was collected indeed the 25th August 2005.

- State whether it is true that by notarial deed following the collection of Incofinsco SPA bank check, DU PONT TEXTILES & INTERIORS (INTERNATIONAL) S.A. yielded to INVISTA SARL INTERNATIONAL the credit originally held against ITAM and that no other public document concerning this issue exists.

- State whether it is true that Invista (International) Sarl, by letter dated the 23rd September 2005 sent to ITAM, declared to be assignee of the credit claimed to ITAM by Du Pont.

- State whether it is true that on the 29th September 2005, ITAM answered Invista (International) Sarl, saying that, at an earlier date, ITAM received notice of credit assignment to Incofinsco SPA, having ITAM already accepted this                                                                                               assignment.

- State whether it is true that in March 2008, all the companies that made up the INVISTA group, filed lawsuit against DU PONT for various issues and also claiming for damages caused after DUPONT yielded to INCOFINSCO the credit against ITAM.

- State whether it is true that INVISTA had already warned DU PONT that the check sent by Incofinsco "does not have to be charged".

- State whether it is true that INVISTA filed lawsuit in the U.S.A against DU PONT asking to compensate INVISTA for the loss generated by the unfulfillment in relation to the fact that DU PONT collected the check of INCOFINSCO, under Article 8.4.a.i of the purchase contract, as according to INVISTA "all this supposed breach of the purchase contract, and it was causing a number of damages that should be compensated, and for which El Du Pont de Nemours and Company was being claimed".

- State whether it is true that the private document of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA, did not perfect a purchase agreement, but an agreement of promise, sale or transfer.

- State whether it is true that apart the document of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA, according to DU PONT's allusions, there was another contract, named Purchase Agreement, being the parties subjected by its terms and provisions and to which the agreement of 30th April 2004 was integrated.

- Refer the complete information regarding that Purchase Agreement referred on the document of 30th April 2004 between KoSa. Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA.

- State whether it is true that in case of conflict between the terms and provisions of the Purchase Agreement and the agreement of 30th April 2004 between KoSa, Sarl. and INVISTA, which INVISTA attributes to be signed between DU PONT and INVISTA, prevailed the Purchase Agreement

QUESTIONS FOR DU PONT INTERNATIONAL OPERATIONS, S.À.R.L. (FORMERLY NAMED DU PONT TEXTILES & INTERIORS (INTERNATIONAL), S.A., INVISTA (INTERNATIONAL), S.A. AND DU PONT TEXTILES FIBERS, S.A.)

1. Is it true that your company's tax identification number (Fed. No.) is CH-660.1.787.002-6?

2. Is it true that the current name of your company is Du Pont International Operations, S.à.r.l.?

3. Is it true that it was formerly named Du Pont Textiles & Interiors (International), S.A., later Invista (International), S.A. and subsequently Du Pont Textiles Fibers, S.A.?

4. What was the reason to quit using the name "Invista"?

5. Did Du Pont International Operations, S.à.r.l. always belong to the Du Pont group?

6. Did Du Pont International Operations, S.à.r.l. at any time belong to Koch Industries or to any of its affiliates?

7. Is it true that on 8 May 2003, when your company was named Du Pont Textiles & Interiors (International), S.A., it signed a public deed in Spain with I.T.A.M., S.p.A. Industria Tessuti a Maglia ("ITAM") (subsequently named I.T.A.M., S.A.S. di Nerina Filippone & C) and with La Ginebra, S.L.?

8. Is it true that in said deed ITAM acknowledged that it owed you the amount of 15,030,947.76 € (the "ITAM Debt")?

9. Is it true that on 30 April 2004, when the name of your company was Invista (International), S.A., an agreement called "Asset Assignment Deed Stock Transfer and Assumption Agreement" was signed with the company at that time named KoSa, S.à.r.l.?

10. Is it true that said agreement ("Asset Assignment Deed Stock Transfer and Assumption Agreement") was signed in the context of a transaction for the sale/purchase of one of the branches of activity of the Du Pont group, namely the Invista fibers business?

11. Is it true that said sale/purchase transaction was regulated in the purchase agreement of 16 November 2003 called the "Purchase Agreement"?

12. Is it true that this Purchase Agreement was entered into by: (i) on one hand, E.I. Du Pont de Nemours and Company and the other international Sellers specified in the

Purchase Agreement (including Du Pont International Operations, S.à.r.l., at that time named Invista (International), S.A.); and (ii) on the other hand, KED Fiber Ltd. and KED Fiber LLC?

13. Is it true that through the so-called "Asset Assignment Deed Stock Transfer and Assumption Agreement" the receivables that ITAM owed Du Pont International Operations, S.à.r.l. (at that time named Invista (International), S.A.) was transferred to KoSa, S.à.r.l. and that such receivables were the same ones that had been acknowledged by ITAM in the public deed signed in Spain on 8 May 2003?

14. Is it true that in Attachment B to said agreement only part of the receivables owed by ITAM were reflected (although the receivables were transferred in full) because your company had provisioned a good part of it, at the risk of not being able to collect it?

15. Is it true that the agreement is governed by Swiss law?

16. Is it true that the ITAM Debt was guaranteed by a series of promissory notes and mortgages?

17. Is it true that the promissory notes were handed over to Invista (International) S.à.r.l. (at that time named KoSa, S.à.r.l.)?

18. Is it true that ITAM paid three of such promissory notes, specifically the promissory notes of May, June and July 2003, in the amount of 300,631.75 € each?

19. Is it true that in order to be able to transmit the mortgage securities for the ITAM Debt it was necessary to carry out certain formal acts to register the securities on behalf of Invista (International), S.à.r.l., at that time named KoSa, S.à.r.l.?

20. Is it true that such formal acts were carried out after the transfer of the receivables?

21. Is it true that one of such acts was the public deed signed on 25 August 2005 in Lausanne, Canton of Vaud (Switzerland) by your company, at that time named Du Pont Textiles Fibers, S.A., and Invista (International), S.à.r.l. (formerly named KoSa, S.à.r.l.)?

22. Is it true that the ITAM Debt was not transferred in said public deed, but had already been transferred in the "Asset Assignment Deed Stock Transfer and Assumption Agreement" of 30 April 2004?

23. Is it true that the public deed signed on 25 August 2005 in Lausanne (Switzerland) was one of the necessary formal acts that your company had undertaken, among

others, in the agreement signed on 17 December 2004 by E.I. Du Pont de Nemours and Company and Invista B.V., called the "Supplemental Agreement"?

24. Is it true that the company Incofinsco, S.P.A. ("**Incofinsco**") sent you a letter in August 2005 in which it proposed to you the acquisition of the ITAM Debt in exchange for payment of 1% of said debt, that is, 153,315.80 €?

25. Is it true that said proposal by Incofinsco did not arise from any prior agreement with said company, nor from any prior relationship between the parties?

26. Is it true that the letter sent by Incofinsco was accompanied by a check in the amount of 153,315.80 €?

27. Is it true that said check was not cashed by your company, but by Du Pont de Nemours International, S.A.?

28. Is it true that Du Pont de Nemours International, S.A. cashed that check in its own name and not in the name of Du Pont International Operations, S.à.r.l., at that time named Du Pont Textiles & Interiors (International), S.A.?

29. Is it true that said check was cashed by mistake and that several attempts were made to reimburse said amount to Incofinsco?

30. Is it true that on the date your company received the letter from Incofinsco and Du Pont de Nemours International, S.A. cashed the check (that is, in August 2005), your company was no longer the owner of the ITAM Debt?

31. Is it true that the promissory notes guaranteeing the ITAM Debt were never transferred to Incofinsco?

32. Is it true that the mortgages guaranteeing the ITAM Debt were never transferred to Incofinsco

33. Is it true that Incofinsco has never initiated judicial proceedings against your company for such alleged double transfer, nor for the non-transfer of the promissory notes and mortgages?